IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ZELDA WALLS, Individually and as
Surviving Spouse of Arlie Walls                    PLAINTIFF

V.                         4:11CV00199 JMM

PETROHAWK PROPERTIES, LP and
EXXON MOBIL CORPORATION                    DEFENDANTS/
                                           COUNTER-PLAINTIFFS

V.

ZELDA WALLS, Individually and as
Surviving Spouse of Arlie Walls               COUNTER-DEFENDANT

### ORDER GRANTING MOTION FOR
### PARTIAL SUMMARY JUDGMENT

Pending is the Defendants' Motion for Partial Summary Judgment. The Plaintiff has responded and the Defendants have replied. For the reasons set forth below, the Motion is GRANTED.

**I.   Facts**

Zelda Walls ("Plaintiff") is a resident and owner of land in Van Buren County, Arkansas. Plaintiff and her deceased husband, Arlie Walls, entered into an Oil and Gas Lease ("Lease") with Griffith Land Services, Inc. on August 18, 2005. Subsequently, Plaintiff and her husband received bonus payments and royalties based upon the production and marketing of oil and gas from their property.

Under the Lease, Griffith Land Services had the right of assignment. The Lease provided:

> Lessee shall obtain written consent from Lessor before assigning lease to a third party which consent shall not be unreasonably withheld. If the estate of either party is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants of

>this Lease shall extend to their heirs, executors, administrators, successors, or assigns. However, no change or division in ownership of the lands or royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the lands or royalties shall be binding on the Lessee until after the Lessee has been furnished with a written transfer or assignment or a true copy of the written transfer or assignment. If Lessee assigns this Lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment. All obligations of Lease shall be binding upon assignee.

(Complaint at p. 3-4).

According to Griffin Land Services, a request for consent to assign the Lease was sent to the Walls on September 29, 2005. (Ex. 2 to Def.'s Reply to Mot. For Part. Summ. Judg.). Plaintiff testified that she does not recall seeing the request. (Ex. B to Pl's Resp. To Mot. For Part. Summ. Judg.). Griffin Land Services did not receive a response from the Walls and, therefore, continued with the assignment to Alta Resources, LLC on September 22, 2005.

A second request for consent to assign the Lease was sent by Alta Resources to the Walls two years later in December, 2007. A letter explaining the request along with the consent forms were received and signed for by Mr. Arlie Walls on December 10, 2007. (Ex. 4 to Def.'s Reply to Mot. For Part. Summ. Judg. At p. 6). Again, no response was obtained from the Walls and the Lease was assigned by Alta Resources to Defendant Petrohawk Properties, LLC.

On May 21, 2010, Plaintiff made a demand on Griffith Land Services, and successors-in-interest, including Defendant Petrohawk, for payment of miscalculated royalties. (Ex. 1 to Def.'s Reply to Mot. For Part. Summ. Judg.). Upon demand, Petrohawk suspended further royalty payments under the Lease and initiated a full review of payment history to Plaintiff under the Lease. Petrohawk discovered that, up to that point, Petrohawk and predecessors-in-interest had mistakenly miscalculated royalty payments owed to Plaintiff. Petrohawk paid Plaintiff over $200,000.00 which it found was owed to her under the Lease.

Approximately six months later in December, 2010, Defendant Petrohawk sent Plaintiff a request for consent to assign the Lease to Defendant Exxon Mobil Corporation. Plaintiff's attorney responded to the request by letter dated December 15, 2010. (Ex. 6 to Def.'s Reply to Mot. For Part. Summ. Judg.). In the letter, counsel noted that a legal description of the property under the Lease was not included with the request, that the previous transfers of the Lease were breaches of the Lease, and by asking for "detailed information as to why it would be in the best interest of Mrs. Walls to agree to the assignment." *Id.*

Plaintiff filed suit against the Defendants on December 16, 2010 in the Circuit Court of Van Buren County, Arkansas. She alleges that the Defendants breached the Lease by failing to get her consent to assign the Lease and by failing to pay all of the royalties which were due to her under the Lease. She seeks monetary damages for the failure to pay royalties and a declaratory ruling that the Lease and all assignments are no longer valid and enforceable. The Defendants removed the action to this Court on March 1, 2011.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

**III.     Discussion of the Law**

The Defendants seek summary judgment of Plaintiff's claims for material breach of the Lease agreement based upon miscalculation of royalties and failure to obtain consent to assign the Lease.

**A.     Royalties**

It is undisputed that when Plaintiff complained to Defendant Petrohawk, the lessee at the time, that she was not being paid the correct amount of royalties under the Lease, Petrohawk investigated and recalculated the royalties due to Plaintiff. As a result, Petrohawk paid Plaintiff a substantial amount of money which they believed repaid Plaintiff for the royalties. Plaintiff

accepted the payment and continued on with her obligations under the Lease. Subsequently, Plaintiff asks the Court to find that this miscalculation and payment of royalties was a material breach justifying a cancellation of the Lease.

The Court has not identified any Arkansas case law which supports Plaintiff's position on the miscalculation of royalties. In fact, in *Schaffer v. Tenneco Oil Co.,* 647 S.W.2d 446 (Ark. 1983) the Arkansas Supreme Court held that even though the lessor had not been paid any royalties under the Lease for five years, no cause for cancellation of the Lease existed. The lessor in the case had a remedy at law for damages, payment of the royalties due under the Lease. The Court stated, "Where there is no cessation of marketing of oil and gas for a substantial period but only the nonpayment of royalties, the lessors generally have a plain, speedy, and adequate remedy at law for damages." *Schaffer v. Tenneco Oil Co.,* 647 S.W.2d 446, 447 (Ark. 1983) (citing Cannon v. Cassidy, 542 P.2d 514 (Okla. 1975).

While Petrohawk, and/or its predecessors, may have been in technical breach of the Lease prior to the $200,000.00 payment to Plaintiff, the Court finds as a matter of law that the breach was not material. *See TXO Production Corp. v. Page Farms, Inc*., 698 S.W.2d 791, 793 (Ark. 1985) ("If one party to a bilateral contract commits a partial breach of his duty, one that is not so material as to discharge the other party's duty of performance, the latter's only remedy is damages for the partial breach.") Further, the Court finds that Petrohawk cured the breach by making the payment.[1]

Moreover, the Court finds that Plaintiff waived the breach with full knowledge of all the

---

[1] Whether the Plaintiff is owed interest on the amount of royalties which were not timely paid, is not an issue before the Court in this motion for summary judgment. That issue remains to be resolved by the Court or the parties.

facts by accepting the payment from Petrohawk and continuing with the Lease. "The principle is elemental that one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach." *Clear Creek Oil & Gas Co. v. Brunk*, 255 S.W. 7, 8 (Ark. 1923) (citing *Friar v. Baldridge*, 91 Ark. 133, 120 S. W. 989; *Grayson-McLeod Lbr. Co. v. Slack*, 102 Ark. 79, 143 S. W. 581; *Bennett Lbr. Co. v. Walnut Lake Cypress Co.*, 105 Ark. 421, 151 S. W. 275; *Marker v. East Arkansas Lbr. Co.*, 135 Ark. 435, 205 S. W. 818).

**B.     Assignments**

Plaintiff also claims that the Defendants breached the Lease by assigning the Lease without Plaintiff's consent as required. Plaintiff claims that the failure to obtain her consent to assignment of the Lease requires cancellation of the Lease. Again, the Court finds that the Plaintiff waived the breach by her counsel's letter to Petrohawk dated May 21, 2010 which stated: "Arlie and Zelda Walls initially leased with Griffith Land Services, Inc. and it is my understanding that those leases have been assigned to Petrohawk. Mrs. Walls has retained our firm to assist her in collecting the proper amount of royalties on these leases." (Ex. 1 at p. 1 to Def.'s Reply). Plaintiff demanded payment from Petrohawk as the assignee of the Lease. As stated, Petrohawk paid Plaintiff what Petrohawk believed to be the amount owed under the Lease. Plaintiff accepted the payment by Petrohawk and continued on with her obligations under the Lease. Plaintiff waived her claim for breach based on previous assignments at that time.

The later assignment of the Lease from Petrohawk to Exxon Mobil, however, occurred

after the acceptance of payment by the Plaintiff. On December 2, 2010, Petrohawk sent Plaintiff a request for consent to the assignment of the Lease to Exxon. On the same day, Aaron Latham of Petrohawk called Plaintiff twice and left messages for her. Plaintiff's counsel responded to Petrohawk by letter dated December 15, 2010. (Ex. 6 to Def.'s Reply). In the letter, counsel outlined problems with the request, including the failure to include a complete legal description, the date of the assignment between Petrohawk and Exxon, and the failure to obtain Plaintiff's consent on previous assignments. In conclusion, counsel asked for "detailed information as to why it would be in the best interest of Mrs. Walls to agree to the assignment. . . ." *Id.* Plaintiff filed suit against the Defendants the following day. Petrohawk assigned the Lease to Exxon without Plaintiff's consent.

The Court must determine whether the Exxon assignment was a material breach of the Lease. The Lease provides: "Lessee shall obtain written consent from Lessor before assigning lease to a third party which consent shall not be unreasonably withheld." (Complaint at p. 3). The Defendants contend that Plaintiff's objections to the request for consent to assignment were unreasonable as a matter of law and cite the Court to *Warmack v. Merchants Nat'l Bank of Fort Smith*, 612 S.W.2d 733 (Ark. 1981).[2]

In *Warmack*, the Arkansas Supreme Court adopted the Restatement of Property, § 15.2 which states:

> A restraint on alienation with the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot

---

[2] Although *Warmack* does not involve an oil and gas lease, the parties have not cited, and the Court has been unable to find, a case involving the reasonableness of an oil and gas lessor's withholding of consent to assignment of a lease. Therefore, the Court will consider the law of the *Warmack* case as persuasive, not controlling, authority.

> be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.

*Warmack*, 612 S.W.2d at 735. In the instant case, the Lease does not provide Plaintiff the "absolute right" to withhold consent to assignment. To the contrary, the Lease states that Plaintiff consent "shall not be unreasonably withheld." (Complaint at p. 3). The term "unreasonable" is a term of art in property contracts. The *Warmack* court explained the meaning of "unreasonable" in this context.

> The Restatement of Property, supra, notes that: "A general statement of what constitutes unreasonableness in this area (i. e., a landlord's refusal of consent to a transfer) was given in *Mitchell's v. Nelms*, 454 S.W.2d 809 (Tex. Civ. App. 1970), that being: 'without fair, solid and substantial cause or reason.'"

*Id.*

Plaintiff did not provide Petrohawk with a fair, solid, or substantial cause or reason for her failure to consent to the assignment of the Lease to Exxon. Plaintiff did not state specific concerns of any nature about Exxon. A fair, solid, or substantial reason for refusing to consent to the assignment might include a concern about the financial stability of Exxon, or about Exxon's practices regarding production or marketing of gas from wells. *See, id.* There is no dispute between the parties regarding Plaintiff's response to the request for consent. The Court finds that a reasonable jury could not find that the Plaintiff reasonably withheld her consent to assignment of the Lease to Exxon. In other words, Plaintiff unreasonably withheld her consent to the assignment. The Lease did not give Plaintiff the right to unreasonably withhold her consent. Therefore, the Court finds that Petrohawk's assignment of the Lease to Exxon was not a material breach of the Lease.

## IV. Conclusion

Defendant's Motion for Partial Summary Judgment (Docket # 12) is GRANTED.

IT IS SO ORDERED this 13th day of January, 2012.

                                                James M. Moody
                                                United States District Judge